Kathy **FLEMING**, Plaintiff,

v.

**BORDEN, INC.**, Defendant.

**C.A. No. 7:89–2839–3.**

United States District Court,
D. South Carolina,
Spartanburg Division.

July 9, 1992.

Charles Richard Kelly, Columbia, SC, for plaintiff.

Melegia Lee Daniels, Jr., Daniels & Robinson, John P. Mann, Mann Law Firm, Greenville, SC, for defendant.

## MEMORANDUM OF DECISION AND ORDER

GEORGE ROSS ANDERSON, Jr., District Judge.

This matter comes before the Court on defendant's Motion for Summary Judgment. Plaintiff's Complaint, as amended, alleged numerous violations of state law, based on both contract and tort theories, as well as a federal claim alleging discriminatory discharge, in violation of Section 510 of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. Section 1140. Plaintiff's state law claims were remanded to state court and resolved there. This Court will not consider them further. For the reasons stated below, the Court grants summary judgment to defendant on plaintiff's ERISA claim.

### FACTUAL BACKGROUND

Plaintiff was employed at defendant's snack food plant in 1981. In 1985, she took two extended leaves of absence, one for an operation on her thumb and one for migraine headaches. She drew short-term disability benefits each time. She was also absent from work on several other days in 1985 for various reasons. She was given two warnings in 1985 for excessive absences. Her leaves of absence were not counted toward her absence record. On January 30, 1986, plaintiff suffered an injury to her wrist at work. She returned to work the next day on light duty and, despite her injury, was able to work her regular hours until the middle of April, 1986. She saw several doctors concerning her injury. None expressed an opinion that she should not be working, although she was restricted to duties which did not involve use of her right arm. During March, she was given a third warning for excessive absenteeism for absences unrelated to her injury.

After the middle of April, plaintiff never worked a full shift. She would come in, work for a short while, and leave, complaining of her arm hurting. She was informed by her superiors that her leaving would be considered an unexcused absence unless she brought a note from the doctor saying she couldn't or shouldn't be working. Plaintiff contends that she was not able to stay at work during this time because she was given jobs which required her to use her right arm and/or made her right arm hurt. While plaintiff did see several doctors between the middle of April and her discharge, none of them ever expressed an opinion that she should not be working. Plaintiff was given another written warning, specifically about her problems with unexcused absences, on June 12, 1986.

In late June, defendant received a notice from an orthopedic specialist to whom plaintiff had been referred to the effect that he felt she could return to her normal duties. Plaintiff was informed of this. When she did not work a full shift the next two nights, she was terminated for excessive absenteeism on June 25, 1986.

## ERISA CLAIM

■ Under Section 510 of ERISA, it is unlawful to discharge an employee for the purpose of interfering with the attainment of any right to which they may become entitled under an employer's benefit plan. Plaintiff contends that the true reason for her discharge was to get rid of her before she qualified for long-term disability under defendant's plan.

■ The Fourth Circuit has determined that a plaintiff must show specific intent by a defendant to violate Section 510 in order to recover. *Conkwright v. Westinghouse Electric Corp.*, 933 F.2d 231 (4th Cir.1991). This may be accomplished through direct evidence of discrimination or the use of the *prima facie* case analysis used in race and age discrimination cases. Plaintiff has no direct evidence of discrimination. For a Section 510 action, the *prima facie* case consists of four elements:

1. Membership in a benefit plan;
2. Job performance at a level that meets the employer's legitimate expectations;
3. An adverse employment decision; and
4. Some evidence which establishes a causal connection between the employment decision and membership in the benefit plan.

■ Viewing the evidence and any reasonable inferences from the evidence in the light most favorable to plaintiff, as the court must do on a summary judgment motion, plaintiff has produced no evidence which is sufficient to supply a causal connection between her discharge and the long-term disability plan.

Plaintiff argues that she was well on her way to qualifying for long-term disability when she was discharged, and this supplies the necessary causal connection. Under defendant's plan, an employee must be disabled for six months in order to qualify for long-term disability. There is a dispute between the parties concerning the standard used by the plan to determine eligibility for long-term disability. Plaintiff alleges that the following language should be used to determine eligibility:

> Once Long Term Disability Plan benefits start, they will continue:
> * for the next two years if you are not able to perform the essential duties of your job, and ...

Plaintiff argues that she could not perform the essential elements of her job from the date of her injury in January until her discharge in June, a period of five months. The language cited by plaintiff, however, applies only *after* an employee has qualified for long-term benefits. This language is the standard used to determine continuation of benefits for up to a two-year period following the six-month waiting period. Defendant points to language in the plan which requires total and continuous disability for the six-month waiting period in order to qualify for long-term disability benefits.

It is not necessary, however, for the Court to resolve this question, since it is clear that a medical opinion is required under the plan to qualify for disability. Plaintiff has presented no expert medical opinion which would satisfy either the requirement that she was unable to perform her essential job duties during this period *or* that she was totally and continuously disabled. In fact, the uncontroverted evidence is that she worked her regular schedule for two and one-half months of the five-month period she claims. For the other half of this period, even though she left work on a regular basis, the opinion of the medical experts who treated her was that she was able to work. Clearly, plaintiff's claims of pain caused by her job duties would not have been sufficient, by themselves, to qualify her for disability benefits. Moreover, even had she presented medical evidence of disability, in order to supply the required causal connection, she would have to show that defendant was aware of and concerned about her growing eligibility for long-term disability. She has provided no evidence from which this Court

could conclude defendant even considered the question of whether she was proceeding toward eligibility. The agents of defendant who discharged her denied any knowledge of her eligibility. There is no evidence of any communications between them and the administrator of the long-term benefits plan in Columbus, Ohio, relative to her eligibility.

Plaintiff contends that defendant would save money by discharging her prior to her becoming eligible for benefits. While the only evidence in the record seems to indicate the long-term benefits were funded by employee contributions, the fact that defendant might save money by discharging plaintiff, even if true, by itself, is not sufficient to supply a causal connection. *Conkwright, supra* at 239. *See Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1113 (2d Cir.1988). If that were true, any actions by an employer that resulted in cost savings would be evidence of discrimination.

Finally, plaintiff argues that defendant's attendance policy inherently discriminates against persons who seek to qualify for disability. This Court need not determine if an attendance policy which is inherently discriminatory supplies the requisite specific intent required under Section 510, for in no way can the instant policy be considered inherently discriminatory towards employees who may be eligible for disability payments. The attendance policy at issue allows for necessary absences. If an employee exceeds the plant's average absenteeism rate, they are given several opportunities to improve before discharge occurs. The policy gives due regard for those people who may suffer from disabling medical conditions by providing for leaves of absence, which are not counted against an employee's attendance record. Plaintiff contends she was fired for her attendance before she could qualify for long-term disability. Yet, her absence record for one and one-half years, not just six months, was considered in discharging her. The reason her absences were counted against her was because she never secured a medical opinion which would have qualified her for a leave of absence, not because of an inherently discriminatory policy. This case is not at all like *Gavalik v. Continental Can Co.*, 812 F.2d 834 (3d Cir.1987), as plaintiff suggests.

Since plaintiff has no evidence which would tend to prove a causal connection between her discharge and her membership in the disability plan, summary judgment is proper. Even if plaintiff could present a *prima facie* case, her excessive absenteeism under defendant's policy provides a legitimate, non-discriminatory reason for her dismissal. Plaintiff has presented no evidence from which the Court could reasonably conclude that this reason was a pretext for benefits discrimination. In response to a well-supported motion for summary judgment, "a plaintiff must adduce facts, which if taken as true, could enable a jury to identify unlawful intent from the various other reasons why an employer might have terminated plaintiff ..." *Conkwright, supra* at 239. This the plaintiff has not done. Her failure mandates entry of summary judgment in favor of defendant.

IT IS THEREFORE ORDERED that defendant's Motion for Summary Judgment be granted, and plaintiff's Complaint be dismissed with prejudice in its entirety.

IT IS SO ORDERED.